**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO.:

SURGERY CENTER OF VIERA, LLC,

*Plaintiff,*

vs.

UNITEDHEALTHCARE INSURANCE COMPANY OF ILLINOIS, SIERRA LOBO, INC. WELFARE BENEFIT PLAN, and SIERRA LOBO, INC.,

*Defendants.*

_______________________________________/

## COMPLAINT

Plaintiff, Surgery Center of Viera, LLC ("SCV"), as assignee, authorized representative, and medical provider of patient / insured, C.B., sues Defendants, UnitedHealthcare Insurance Company of Illinois ("UHC," claim and plan administrator), Sierra Lobo, Inc. Welfare Benefit Plan ("Sierra Lobo Plan"), and Sierra Lobo, Inc. ("Sierra Lobo"), as follows:

## NATURE OF THE ACTION, PARTIES, JURISDICTION AND VENUE

1. This action arises, in part (Count I), under the Employment Retirement Income Security Act of 1974, Title 29, United States Code, Sections 1000-1461 ("ERISA"), for Defendants' administrative record production failures pertaining to the subject C.B.-related health insurance claim, implicating ERISA, Title 29, United States Code, Section 1024(b), Title 29, United States Code, Section 1132(c)(1), and Title 29, Code of Federal Regulations, Section 2575.502c-1 to be precise. This action also arises, in part (Counts II-IV), under state law for Defendants' wrongful, unsubstantiated underpayment of the health insurance benefits owed to the

medical provider (SCV) for medical services SCV provided to Plan participant / patient / insured, C.B., on September 16, 2015.

2. Authority makes clear that a "rate of payment claim" (such as the instant case) is not subject to the Employment Retirement Income Security Act of 1974, Title 29, United States Code, Sections 1000-1461 ("ERISA"), versus a "right of payment claim" (not such as the instant case) that would be subject to ERISA.

3. At all material times, SCV was a medical provider and a Florida limited liability company with its citizenship (*i.e.*, principal place of business / "nerve center") in Viera, Florida, Brevard County. SCV is *sui juris* in all respects. SCV's members are as follows: (a) Dr. Ara Deukmedjian, domiciled in Brevard County, Florida, (b) Sun Deukmedjian, domiciled in Brevard County, Florida, and (c) Dr. Bharat Patel, domiciled in Brevard County, Florida. At all material times, SCV was the medical provider and authorized representative of C.B. with an assignment of benefits as well.

4. At all material times, UHC was an insurance company with its principal place of business / headquarters in the State of Illinois and engaged in the business of selling and / or administering health insurance and / or deciding health insurance claims (*i.e.*, claim administering) and / or administering health insurance plans.

5. At all material times, the Sierra Lobo and Sierra Lobo Plan Defendants maintained a principal place of business / headquarters in the State of Ohio and were, upon information and belief, engaged in the administration of the subject Plan.

6. This Court possesses original jurisdiction pursuant to Title 29, United States Code, Section 1132(c)(1), and Title 28, United States Code, Section 1331 at least with respect to Count I. Pursuant to Title 28, United States Code, Section 1367, the Court has pendent jurisdiction over

Counts II-IV. Moreover and for what it is worth, the Court would also have jurisdiction pursuant to Title 28, United States Code, Section 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00.

7. Venue is proper in the Middle District Court of Florida and in this division pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) a substantial part of the events or omissions giving rise to the subject action occurred in this jurisdiction, namely Defendants' underpayment of the subject insurance claim both at the initial claim and subsequent pre-suit appeal stages and refusal to supply germane documentation / information required by federal law, not to mention the subject medical procedure(s) at the root of the disputed medical bill(s) occurred in this jurisdiction, and (b) the Orlando Division of this Court has personal jurisdiction (due to minimum contacts in this forum) over at least UHC.

8. All conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals) have occurred, been performed, been waived, or were futile.

## COMMON ALLEGATIONS

9. At all material times, C.B. was covered by the health insurance Plan administered by Sierra Lobo and UHC and fully insured by UHC. This Plan was called Sierra Lobo, Inc. Welfare Benefit Plan and bared Group / Policy No. 901509. The Member ID No. for C.B. was 963938685. A copy of the Plan document is attached hereto as **Exhibit A**.

10. At all material times leading up to the subject medical services received from Surgery Center of Viera ("SCV"), C.B. suffered from cervical radiculopathy, cervical stenosis, pseudoarthrosis C5-C6 and C6-C7, cervicalgia, spondylolisthesis, cervical instability, and multilevel cervical spondylosis with radiculopathy. On September 16, 2015, SCV operated on C.B. to remedy C.B.'s medical conditions.

11. By UHC webpage titled "Online Notification/ Prior Authorization Status," dated September 15, 2015, and letter dated September 18, 2015, UHC approved all of the codes billed by SCV for C.B.'s surgery. Again, this is not a "right of payment claim," this is a "rate of payment claim."

12. SCV's billed charges for the subject medical services rendered to C.B. totaled $352,307.00. A claim package was submitted to UHC by SCV, relaying that total (among other things), and claim number 5257300333 was assigned to the claim.

13. The Plan's "eligible expense" (*i.e.*, how much to indemnify) provision provides, in pertinent part, as follows:

> Eligible Expenses – for Covered Health Services, incurred while the Policy is in effect, Eligible Expenses are determined by us as stated below and as detailed in the *Schedule of Benefits*.
>
> Eligible Expenses are determined solely in accordance with our reimbursement policy guidelines. We develop our reimbursement policy guidelines, following evaluation and validation of all provider billings in accordance with one or more of the following methodologies:
>
> • As indicated in the most recent edition of the Current Procedural Terminology (CPT), a publication of the American Medical Association, and/or the Centers for Medicare and Medicaid Services (CMS).
> • As reported by generally recognized professionals or publications.
> • As used for Medicare.
> • As determined by medical staff and outside medical consultants pursuant to other appropriate source or determination that we accept.

Ex. A at 71 COC.DEF.I.11.1L (emphasis in original). Then, most importantly, the schedule of benefits provides, in pertinent part, as follows: "For Non-Network Benefits, Eligible Expenses are based on either of the following: … Negotiated rates agreed to by the non-Network provider and either us or one of our vendors, affiliates or subcontractors… ." *Id.* at 25 SBN.CHP.I.11.IL.

14. By way of a November 6, 2015, explanation of benefits ("EOB"), UHC underpaid the subject claim, tendering $96,310.70 on the $352,307.00 in billed charges.

15. Again, this is not a coverage dispute (*i.e.*, "right of payment claim") because Defendants properly conceded coverage by way of, among other things, the $96,310.70 partial claim payment and did not list any medical judgment related basis for partial payment in the EOB.[1] Rather, this is a damages dispute (*i.e.*, "rate of payment claim") pertaining solely to the underpayment that was predicated on UHC's wayward claim decision-making.

16. So, then, SCV did the best it could with its pre-suit appeal / claim re-processing efforts concerning the subject claim underpayment. "The best it could" because, again, UHC's EOB and claim-decision correspondence were unsubstantiated as to bases for the amount of claim underpayment and Defendants have refused to produce the entirety of the administrative record or otherwise substantiate the amount of claim payment.[2]

17. This patient plan falls under a contract that SCV had / has with Preferred Medical Claims Solutions ("PMCS"), which is UHC's vendor / subcontractor.[3]

18. SCV sent a "claim reconsideration form" dated December 1, 2015, that asked UHC to abide by the PMCS negotiated rate, which such PMCS framework falls within available prongs of the Plan's definition of "eligible expense" and how to determine eligible expense. *See* ¶ 13, *supra* (providing, in part, that "eligible expense" can be determined based on "generally

---

[1] Other EOBs we have seen in the past, for example, clearly have claim decision codes that state that the services were not deemed medically necessary. No such medical judgment kind of claim decision code, or otherwise, is set forth on the subject EOB.

[2] Given this dispute (at least Counts II-IV) is subject to state law (because, again, the insurance benefits dispute is a "rate of payment" dispute), Defendants' unexplained claim underpayment decision was also in violation of Section 626.9541(1)(i)3f of the Florida Statutes (at the very least as it pertains to Sections 624.155 and 626.9541). SCV has filed a Civil Remedy Notice ("CRN") contemporaneously with the filing of this complaint and reserves the right to amend this complaint to add bad faith counts if the CRN regrettably goes uncured during the sixty-day safe harbor period.

[3] In this contract between PMCS and SCV, attached hereto as **Exhibit B**, one of the agreed upon terms and conditions was that SCV "agree[s] to accepts 80% of the Total Billed Charges as the Adjusted amount on all claims processed by PMCS." UHC is also in an agreement with PMCS as its third-party re-pricing vendor; hence, PMCS-related contractual privity between SCV and UHC. UHC is on PMCS' participant / client list. *See* **Exhibit C**, attached hereto.

recognized professionals or publications" or "[a]s determined by medical staff and outside medical consultants pursuant to other appropriate source or determination that we accept," which such mechanisms are precisely PMCS). And the rates negotiated by UHC's vendor, PMCS, are also precisely what the Plan prescribes. *See* ¶ 13, *supra* ("For Non-Network Benefits, Eligible Expenses are based on either of the following: … Negotiated rates agreed to by the non-Network provider and either us or one of our vendors, affiliates or subcontractors…"). Defendants breached the Plan document (*i.e.*, the insurance contract) in not obliging the rates negotiated by PMCS.

19. Pursuant to the PMCS contract (again, with UHC being privy to same), UHC shorted SCV by at least $190,328.50 on C.B.'s claim payment.[4]

20. By letter dated December 23, 2015, UHC stated, in pertinent part, that "we processed this claim accurately."

21. By letter dated February 23, 2016, SCV sent an appeal that discussed (among other things) the incorrect rate used and addressed the proper methodology to determine the eligible expenses, as set forth in the Plan and / or by PMCS contract.

22. UHC did not respond to or acknowledge this letter, so SCV sent another appeal dated March 8, 2016.

---

[4] Upon information and belief, re-pricing vendors like PMCS are sent around to medical providers by insurance companies (like UHC here) to survey the providers (like SCV here) in relation to establishing a re-price / discount rate predicated on the notion of "usual, customary, reasonable" ("UCR"). PMCS is an example of a re-pricing vendor who has done so in relation to SCV's charges at UHC's behest. PMCS has established / developed the following UCR-related re-pricing formula for SCV: (a) an allowed amount re-pricing rate of 80% of SCV's billed charges less patient responsibilities (*e.g.*, co-pay, deductible, co-insurance) subject to the patient's annual out-of-pocket maximum, and (b) a 100% reimbursement rate for hard costs (*e.g.*, prosthetics / implants). *See* Ex. B. Applied here, UHC should have used the contracted 80% rate to calculate the allowed amount equaling $286,639.20 (which such amount is 80% of all non-implant HCFA line-items and 100% of all implant HCFA line-items ($23,968.00) because implants are hard costs not subject to a re-pricing discount) subject to patient responsibilities. Given the carrier's prior payment doubtless took patient responsibilities into consideration, UHC shorted SCV by at least $190,328.50 ($286,639.20 minus $96,310.70) on C.B.'s claim payment. This amount just includes outstanding insurance benefits pursuant to a reasonable negotiated re-pricing discount; *i.e.*, does not include attorneys' fees, costs, interest, and / or extra-contractual damages.

23. By letter dated April 26, 2016, UHC denied the appeal.[5]

24. By letter dated June 22, 2018, SCV again appealed the subject claim determination.[6]

25. UHC answered by way of a one-page letter dated August 16, 2018, stating as follows: "the claim was processed correctly. As a result, we are unable to issue any further payment."

26. By letter dated May 9, 2019, Jeffrey Greyber, Esq., of Callagy Law, P.C., ("Counsel") advised UHC that he represented SCV. The letter contained a request for the entire administrative record / claim file pursuant to the law and the Plan and UHC correspondence (*see, e.g.,* n. 5, *supra*), stating, in pertinent part, as follows:

> Regarding our assessment of the subject insurance claim(s) denial, underpayment, or delayed non-decision, we ask the claim administrator and / or the plan administrator to please promptly provide us with a copy of the entire administrative record. The administrative record should consist, at minimum, of the following: (1) Complete, certified copies of all plan documents (master policy, summary plan description, benefit booklet, certificate of coverage, or the like) in effect at the times of the subject medical services and / or at the times of any claims made relating to the subject medical services; (2) Copies of all correspondence and / or documents exchanged between the insured / patient (or any insured / patient representatives) and the claim administrator and / or plan administrator regarding the subject medical services and / or any claims made relating to the subject medical services; (3) Copies of all correspondence and / or documents exchanged between Surgery Center of Viera and the claim administrator and / or plan administrator regarding the insured / patient, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; (4) Copies of all correspondence and / or documents exchanged between any other party and the claim administrator

---

[5] This denial letter stated, in pertinent part, that C.B. has the right to: "receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to your appeal, as well as copies of any internal rule, guideline or protocol that we relied on to make this payment decision. You also have the right to receive, upon request and free of charge, an explanation of the scientific or clinical judgment that we may have relied upon in making this benefit decision as well as the diagnosis or treatment codes, and their corresponding meanings."

[6] This appeal requested that UHC comply with law, and the Plan, and provide SCV with the entire administrative record, including, but not limited to, the reasons for the adverse determination, the specific plan provision on which the determination was based, and a description of the additional materials needed to perfect the claim.

and / or plan administrator (less attorney-client privileged data, of course) regarding the insured / patient, subject medical services, and / or any claims made relating to the subject medical services; (5) Copies of all of the insured's / patient's Surgery Center of Viera-related medical records in the claim administrator's and / or plan administrator's possession; (6) Identification of all policy / plan language upon which the claim(s) decision-making was based; (7) Contact information for any medical professionals enlisted by the claim administrator and / or plan administrator regarding the subject medical services and / or any claims made relating to the subject medical services; (8) Transcripts and audio recordings of any recorded statements or phone calls between the insured / patient (or any representatives of the insured / patient) and the claim administrator and / or plan administrator regarding the insured / patient, subject medical services, and / or any claims made relating to the subject medical services; (9) Transcripts and audio recordings of any recorded statements or phone calls between Surgery Center of Viera and the claim administrator and / or plan administrator regarding the insured / patient, subject medical services, and / or any claims made relating to the subject medical services; (10) Transcripts and audio recordings of any recorded statements or phone calls between any other party and the claim administrator and / or plan administrator (less any attorney-client privileged data, of course) regarding the insured / patient, subject medical services, and / or any claims made relating to the subject medical services; (11) All EOBs relating to any claims that were made relating to the subject medical services; (12) All Surgery Center of Viera billing and / or claim(s) submission paperwork received by the claim administrator and / or plan administrator relating to the insured / patient; (13) All evidence of any payment(s) made by the claim administrator and / or plan administrator relating to any claims that were made relating to the subject medical services; (14) All guidelines, manuals, written protocol, medical treatises, medical literature, and / or the like upon which the claim administrator and / or plan administrator partially or wholly based its claim(s) decisions; (15) All billing paperwork, rate / fee schedules, data or formulas, third-party re-pricing vendor (e.g., PMCS, TRPN, MultiPlan, Viant, Optum, Zelis) paperwork / contracts possessed by the claim administrator and / or plan administrator relating to "usual, customary, reasonable" (UCR) medical provider charges (sometimes referred to as the "eligible expense" assessment), and / or any other data upon which the claim administrator and / or plan administrator has based its decisions as to how much indemnity to afford on the subject claim(s); (16) Copies of any documents relating to any reinsurance relating to the subject policy / plan; (17) Copies of any documents relating to any arrangement / agreement between the plan administrator and the claim administrator relating to end of year cost savings between the two (i.e., sharing / splitting of monies saved in relation to the policy / plan due to claim underpayments / denials), which such arrangements / agreements are often called "Level Funded Plans;" (18) Copies of any administrative services agreements (sometimes called Third Party Administrator, "TPA," Agreements, for example) between the claim administrator and plan administrator; and (19) Copies of any other documents

> that the claim administrator and / or plan administrator partially or wholly relied on in deciding any claim(s) relating to the subject medical services.
>
> Equipped with this legally required documentation / information, we will be in a position to assess and carry out the next step (e.g., pre-suit appeal(s), external reviews, complaints / grievances with state offices of insurance regulation, litigation, and / or et cetera). If the claim administrator and / or plan administrator somehow contend that our administrative record production request needs to be directed, in whole or in part, to some other person or entity, we expect the administrators to promptly forward our administrative record production request to that person or entity and carbon copy us on such correspondence.
>
> Thank you in advance for the anticipated prompt response and cooperation. We look forward to working with the administrators towards rectifying the subject claim(s) denial, underpayment, or delayed non-decision.

27. By letter dated May 31, 2019, UHC responded to the document request by sending a copy of the insurance policy (Ex. A), screenshots of a computer screen (without an explanation), and a majority of the correspondence between SCV, Counsel, and UHC that was already in possession of SCV / Counsel.

28. Whether it be Defendants' breaches of contracts, administrative record production failures, or more realistically a combination of the two, SCV was left with little (if any) recourse other than this legal action.

29. At all material times, the Plan (Ex. A) was in full force and effect and was a legally valid and binding contract.

30. At all material times, the PMCS contract (Ex. B) was in full force and effect and was a legally valid and binding contract.

31. SCV has suffered significant financial harm no matter how one slices this situation. The financial harm by way of owed health insurance benefits is in excess of $75,000.00 (exclusive of attorneys' fees, costs, or interest) if an 80% re-pricing / discount rate prescribed by third-party re-pricing vendor PMCS is honored / enforced as it should be, if rates established by

the Plan were enforced (which, as discussed above, involve the PMCS negotiated rate), or even if Florida's publicly available AHCA database were to be utilized in a UCR re-pricing assessment.[7] But what is abundantly clear is that there is no re-pricing in the world (let alone in the subject geography amidst providers of like kind) supportive of what happened here – a 27.3% payout on $352,307.00 in billed charges.

**COUNT I – PETITION TO COMPEL PRODUCTION OF THE "ADMINISTRATIVE RECORD" AND FOR RECOVERY OF ADMINISTRATIVE RECORD PRODUCTION FAILURE PENALTY PURSUANT TO ERISA, 29 U.S.C. § 1024(B), 29 U.S.C. § 1132(C)(1) AND 29 C.F.R. § 2575.502C-1**

SCV re-alleges Paragraphs 1 through 31 as if fully set forth herein and further alleges as follows.

32. This is a claim for production of the administrative record and for award of administrative record production failure penalty pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1.

33. By multiple letters referenced in the above common allegations, SCV and / or its legal counsel asked Defendants to provide the administrative record / germane documentation in relation to the C.B.-related claim, mainly (but not entirely) to learn Defendants' reasons for the 27.3% claim payment lowballing so that SCV could contest same in an educated fashion.

34. Although UHC was / is absolutely a party responsible for production of the administrative record (either directly or *de facto*), *see, e.g.,* Ex. A at XXIII ("Your employer and UnitedHealthcare share responsibility for administering the plan"), the administrative record request was also put to Sierra Lobo. *See, e.g.*, ¶ 26, *supra* ("If the claim administrator and / or plan

[7] *See, e.g.,* http://www.floridahealthfinder.gov/LandingPages/HospitalASC.aspx and http://www.floridahealthfinder.gov/CompareCare/SelectChoice.aspx.

administrator somehow contend that our administrative record production request needs to be directed, in whole or in part, to some other person or entity, we expect the administrators to promptly forward our administrative record production request to that person or entity and carbon copy us on such correspondence"). All Defendants shirked their legally prescribed administrative record production responsibilities.

35. Per the above-cited United States Code and Code of Federal Regulations, *see* ¶ 1, *supra*, the $110.00 / day administrative penalty started accruing July 23, 2018.[8] From July 23, 2018, through the date of this complaint (July 18, 2019), 361 days have passed without Defendants' satisfaction of the administrative record / germane record requests made in the aforementioned SCV letter(s) regarding the C.B. claim. So, as of the filing date of this complaint (July 18, 2019), the $110.00 / day administrative penalty totals $39,710.00. Of course, the $110.00 / day penalty will continue to accrue every day following July 18, 2019, up to and including whenever Defendants oblige the germane documentation / information requests (*e.g.*, a certified copy of the policy / plan document, payment rate schedules / formulas, *et cetera*) set forth in the June 22, 2018, letter noted above. *See* ¶ 24, *supra*.

36. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendants' wrongful withholding of the administrative record / germane documentation.

37. As a further result of Defendants' refusal to produce the administrative record / germane documentation, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover reasonable attorney's fees and costs pursuant to Title 29,

[8] This represents a conservative penalty starting point, starting on Day-31 after SCV's aforementioned June 22, 2018, letter. Depending on what the administrative record reveals (once Defendants are made to produce same), the administrative penalty may have started sooner than July 23, 2018.

United States Code, Section 1132(g)(1) or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the following relief against Defendants, UnitedHealthcare Insurance Company of Illinois, Sierra Lobo, Inc. Welfare Benefit Plan, and Sierra Lobo, Inc.: (a) Court order compelling Defendants to produce the outstanding administrative record posthaste and allowing SCV thirty days following production of the administrative record to amend this complaint, (b) an award to SCV of the administrative record production failure penalty incurred by and against Defendants pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1, (c) an award to SCV of attorneys' fees (pursuant to Title 29, United States Code, Section 1132(g)(1)) and costs incurred bringing this action, and (d) the Court's affording of any other relief the Court deems equitable, just, and / or proper.

**COUNT II – BREACH OF CONTRACT**

SCV re-alleges Paragraphs 1 through 31 as if fully set forth herein and further alleges as follows.

38. At all material times to this action and in exchange for a valuable premium, Defendants provided health insurance to C.B. under the Plan (Ex. A), which is a binding and enforceable insurance contract under state law. And, at all material times, the PMCS contract (Ex. B) was / is a binding and enforceable contract under state law as well.

39. The subject medical services were covered under the Plan, as evidenced by Defendants' partial payment of insurance benefits relating to same. The subject SCV bill should have been paid out pursuant to third-party re-pricing rates as established by PMCS at the very least (80% of all non-implant HCFA line-items and 100% of all implant HCFA line-items because implants are hard costs not subject to a re-pricing discount) and / or publicly available databases

assessing the rates of similarly-situated medical providers in like Florida geographies (*e.g.*, AHCA's publicly available databases). Defendants erred in deciding to not fully indemnifying SCV by only tendering a $96,310.70 underpayment in relation to $352,307.00 in billed charges.

40. UHC erred in deciding to not fully indemnifying SCV in relation to same and the Sierra Lobo Defendants erred in endorsing that decision by only tendering a $96,310.70 underpayment in contravention of the negotiated agreed amount (80% of the $352,307.00 in total billed charges, less patient responsibilities subject to the patient's annual out-of-pocket maximum).

41. By the terms of the Plan and pursuant to state law regardless, Defendants, among other things, had a duty to properly investigate the subject medical services, adjust / investigate the subject SCV claim relating to such services, and fully indemnify SCV in relation to same.

42. Defendants failed SCV in these regards (most notably with respect to their failure to pay all benefits due and owing under the Plan), which breached the Plan (Ex. A), the PMCS contract (Ex. B), and / or violated state law.

43. As a direct, foreseeable, and proximate result of Defendants' breaches of their obligations under the Plan and / or under the PMCS contract, SCV has suffered and continues to suffer damages.

44. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendants' underpayment of the subject health insurance benefits.

45. As a further result of Defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorney's fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment

against Defendants, UnitedHealthcare Insurance Company of Illinois, Sierra Lobo, Inc. Welfare Benefit Plan, and Sierra Lobo, Inc., for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

**COUNT III – UNJUST ENRICHMENT**

SCV re-alleges Paragraphs 1 through 31 as if fully set forth herein and further alleges as follows.

46. SCV conferred a direct benefit upon Defendants by providing Defendants' insured / member (C.B.) with medical services to which the insured was entitled under the Plan as evidenced by Defendants' partial indemnification relating to same.

47. Defendants voluntarily accepted and received the benefit conferred by SCV, with the knowledge that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's usual, customary, and reasonable charges as prescribed by reasonable, negotiated re-pricing vendor PMCS or, for that matter, as prescribed in the Plan or even Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography.

48. Defendants have not paid the value of the benefit conferred by SCV in that Defendants have significantly underpaid SCV's claim for the medical services provided to C.B.

49. Defendants' underpayment results in a windfall for Defendants in that (a) Defendants collect premiums in return for agreeing to properly indemnify providers, like SCV, that render covered medical services, and / or (b) Defendants enjoy an unearned profit (and interest and / or investment returns) on the wrongly withheld insurance benefits.

50. It is unjust under the circumstances for Defendants to underpay SCV's claim.

51. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendants' underpayment of the subject health insurance benefits.

52. As a further result of Defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, UnitedHealthcare Insurance Company of Illinois, Sierra Lobo, Inc. Welfare Benefit Plan, and Sierra Lobo, Inc., for liability and for damages including, but not limited to, past-due benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT IV – *QUANTUM MERUIT*

SCV re-alleges Paragraphs 1 through 31 as if fully set forth herein and further alleges as follows.

53. SCV conferred a direct benefit upon Defendants by providing Defendants' insured / member (C.B.) with medical services to which she was entitled pursuant to the Plan.

54. SCV billed Defendants usual, customary, and reasonable charges for the services as prescribed by reasonable re-pricing vendors (*e.g.*, PMCS) or, for that matter, as prescribed in the Plan or Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography. The billed charges represent the fair market value of the services rendered.

55. Defendants received the bill from SCV but underpaid SCV for the services.

56. SCV is entitled to reasonable compensation for the services (*i.e.*, *quantum meruit*), which is by no means accomplished by the unsubstantiated 27.3% claim payment but is reflected in reasonable sources such as third-party re-pricing vendors' (*e.g.*, PMCS) or Florida's publicly available AHCA databases of assessments of SCV's rates.

57. The circumstances are such that it would be inequitable for Defendants to retain the benefit of the subject medical services without paying SCV the proper value for same.

58. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendants' underpayment of the subject health insurance benefits.

59. As a further result of Defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, UnitedHealthcare Insurance Company of Illinois, Sierra Lobo, Inc. Welfare Benefit Plan, and Sierra Lobo, Inc., for liability and for damages including, but not limited to, past-due benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

**JURY DEMAND**

60. Plaintiff, Surgery Center of Viera, LLC, demands a trial by jury on all issues so triable as a matter of right.

Dated this 18th day of July, 2019.

Respectfully Submitted,

**CALLAGY LAW, P.C.**
1900 N.W. Corporate Blvd.
Suite 310W
Boca Raton, Florida 33431
(561) 405-7966
(201) 549-8753 *facsimile*

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Fla. Bar No. 41103
**Ciara E. Lister, Esq.**
Florida Bar No. 1015511
jgreyber@callagylaw.com
clister@callagylaw.com
hcasebolt@callagylaw.com
*Attorneys for Plaintiff*